# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| HOLLY SCHULTZ<br>415 N Hambden St<br>Chardon, OH 44024<br><br>and<br><br>TRACY CULLER<br>7346 Taft St<br>Mentor, OH 44060<br><br>and<br><br>MACKENZY SCHAEFER<br>745 Creekview Dr<br>East Lake, OH 44095<br><br>  Plaintiffs,<br><br>v.<br><br>THE AGENCY CLUSTER LLC<br>9930 Johnnycake Ridge Rd, Ste 1F<br>Mentor, OH 44060<br><br>  Defendant. | CASE NO. 1:23-cv-1514<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br><br><br><br><br><br><br><br>**Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Holly Schultz, Plaintiff Tracy Culler, and Plaintiff Mackenzy Schaefer (Collectively referred to herein as "Plaintiffs") and proffer this Complaint for damages against Defendant The Agency Cluster LLC ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Laws of Discrimination. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

2. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because the claim arose in the Northern District of Ohio, where at all times material herein Defendant has maintained a place of business at which Plaintiffs worked.

3. Plaintiffs have complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiffs' receipt of their Right to Sue letters from the Equal Employment Opportunity Commission, a copy of each is attached hereto as "Exhibit A," "Exhibit B," and "Exhibit C."

## THE PARTIES

4. Plaintiff Schultz is a natural person residing in Geauga County, Ohio.

5. Plaintiffs Culler and Schaefer are natural persons residing in Lake County, Ohio.

6. Defendant is a domestic limited liability company doing business in the Northern District of Ohio.

7. Plaintiffs were "employees" of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq* and the Ohio Civil Rights Act, R.C. § 4112 at all relevant times herein.

8. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

## FACTUAL BACKGROUND – HOLLY SCHULTZ

9. Plaintiff Schultz was hired by Defendant on or around June 15, 2020.

10. Plaintiff Schultz worked as the Director of Finance and Accounting

11. Within months of starting with Defendant, Plaintiff Schultz personally witnessed Owner, Kenneth Urbania sexually harass and make sexually offensive and obscene comments, jokes, and insults.

12. Kenneth Urbania made harassing remarks, jokes, and insults on a daily basis.

13. Kenneth Urbania encouraged the hostile environment as his son, Collin Urbania, National Platform Agent, also made routine sexually offensive remarks, which Kenneth Urbania laughed at and applauded.

14. Kenneth Urbania also sexually harassed and physically threatened Plaintiff Schultz.

15. Shortly after Plaintiff Schutlz started with Defendant, Kenneth Urbania asked Plaintiff Schultz how much Plaintiff Schultz's husband made at his job. Upon sharing an estimate of her husband's salary, Kenneth Urbania responded, "Wow, with what you're going to be making here, he must have a really big dick for you to stay with him."

16. Plaintiff Schultz was deeply offended and humiliated by this comment.

17. On April 27, 2022, after Plaintiff Schultz made multiple attempts to discuss her yearly bonus, Kenneth Urbania presented Plaintiff Schultz's bonus to her. The bonus was less than half of the amount that Plaintiff Schultz was expecting.

18. At the end of that day, Plaintiff Schultz met with Kenneth Urbania in Kenneth Urbania's office to discuss her concern with the bonus.

19. When Plaintiff arrived, Kenneth Urbania was visibly angry. He started listing mistakes that Plaintiff Schultz had made while speaking aggressively and refusing to let Plaintiff Schultz speak.

20. Kenneth Urbania then aggressively slammed his hand on the desk just feet away from Plaintiff Schultz, saying he was not going to get into a "pissing contest."

21. He then stormed out, and Plaintiff Schultz could hear Kenneth Urbania throwing objects and slamming furniture right outside the door.

22. Kenneth Urbania, who is a large man, stormed back into the office and stood over Plaintiff Schultz while she was seated.

23. Kenneth Urbania stood in between Plaintiff Schultz and the door, so she had no chance to leave.

24. He yelled, "fuck you!" repeatedly and screamed that Plaintiff Schultz should take some time to think about her job. Kenneth Urbania rhetorically asked how Plaintiff Schultz was to deserve any respect.

25. Plaintiff Schultz was sobbing.

26. Kenneth Urbania was towering and shouting so closely to Plaintiff Schultz that his spit was hitting her face.

27. Two other employees had to intervene to get Kenneth Urbania to back off, so Plaintiff could escape.

28. Plaintiff Schultz tried to avoid Kenneth Urbania from then on.

29. On May 25, 2022, Kenneth Urbania entered Plaintiff Schultz's office and shut the door. He motioned for Plaintiff Schultz to stand up, and then, without consent, he approached her and hugged her for an uncomfortably long time.

30. Plaintiff feared for her physical safety.

31. Around this time, Kenneth Urbania told Plaintiff Schultz that he was "touchy-feely" with another female subordinate. He told Plaintiff Schultz that he was afraid that other

employees would think that he had a "threesome" with the female subordinate employee and another person.

32. Plaintiff responded that it was not her business to discuss.

33. On February 16, 2023, Kenneth Urbania gave human resource job duties to Plaintiff Schultz along with her duties as Director of Finance and Accounting.

34. Later that day, Kenneth Urbania approached Plaintiff Schultz and asked, "Did I get your juices flowing with the HR stuff?"

35. Kenneth Urbania then followed up his question by saying, "Oh wait, I probably shouldn't say that to HR."

36. Kenneth Urbania's sexual reference to Plaintiff Schultz made Plaintiff Schultz feel insulted and humiliated.

37. Plaintiff Schultz has also witnessed Kenneth Urbania tell sexual stories or speak about women in a sexual manner.

38. On multiple occasions, Kenneth Urbania told a story about a client's assistant having sex in an office stairwell.

39. Kenneth Urbania speaks about his wife, Michelle Urbania, regularly in a sexual manner, which makes Plaintiff Schultz feel uncomfortable.

40. At one point, when Ms. Urbania came to the office to deliver balloons for Kenneth Urbania and her 25-year wedding anniversary, Kenneth Urbania told Plaintiff Schultz that he believed his wife had only come into the office to "check [Plaintiff Schultz] out."

41. This comment made Plaintiff Schultz feel uncomfortable, and she quickly changed the subject.

42. Kenneth Urbania often said how he bought sex toys for his wife.

43. Kenneth Urbania said that his wife "could ride anyone she wanted all day" and he "would never say a word" if his wife made as much money as him.

44. Kenneth Urbania also informed Plaintiff Schultz that he was nervous that his wife knew that he was cheating on her.

45. Plaintiff Schultz has witnessed Kenneth Urbania make sexually hostile comments towards other female employees, as well.

46. For example, Kenneth Urbania purchased a palm tree for employee, Kari Ball. Kenneth Urbania told Ms. Ball that he expected Ms. Ball's husband to get a "nice treat" and "get some" because Ms. Ball was in a good mood a because of the palm trees.

47. Also, when Plaintiff Tracy Culler was assisting Kenneth Urbania install a toilet paper holder, Kenneth Urbania positioned himself under Plaintiff Culler, who was seated on the toilet. Kenneth Urbania said, "I bet you never thought you'd look down and see my head between your legs."

48. Kenneth Urbania also started a false rumor that he and Tracy Culler had a physical romantic relationship in college.

49. Plaintiff Schultz has also witnessed Kenneth Urbania many times make sexually demeaning comments about employee, Paula Bertone.

50. Kenneth Urbania has said that Ms. Bertone has "a pretty face, but her ass is too big." He also claims that Ms. Bertone only dates Mexicans and is "deliberate about changing her bed sheets," which was a reference to sex.

51. Kenneth Urbania refers to Ms. Bertone as "Juicy P."

52. Kenneth Urbania also brags about how Ms. Bertone fell asleep in his hotel room all night during a company trip to Orlando, Florida.

53. Plaintiff Schultz frequently reported the harassment to part owner, Gary Hines.

54. In February 2023, Mr. Hines emailed all company employees notifying them that they could work from home for the foreseeable future if they were not comfortable with the work environment.

55. Plaintiff Schultz began working from home to avoid the harassment.

56. However, as of May 25, 2023, Kenneth Urbania required all employees to return to in-person work.

57. Plaintiff Schultz did not return to the work environment on May 25. Instead, she used PTO and delayed her return.

58. Plaintiff Schultz was constructively discharged on or around June 23, 2023.

## FACTUAL BACKGROUND – PLAINTIFF TRACY CULLER

59. Plaintiff Tracy Culler was hired by Defendant in or around July 2021.

60. Before starting with Defendant, Plaintiff Culler had been a stay-at-home mother of five children for 15 years.

61. Before being hired by Defendant, Plaintiff Culler, who was acquainted with Kenneth Urbania, informed Kenneth Urbania that her family's financial position required her to reenter the workforce.

62. Kenneth Urbania insisted that Plaintiff Culler come work for Defendant.

63. Plaintiff Culler was hired as a Project Manager.

64. In that role, Plaintiff Culler assisted with insurance sales, solicited business, and provided support for out-of-town conferences, among other things.

65. Immediately upon her hire, Kenneth Urbania began to sexually harass Plaintiff Culler. Kenneth Urbania also subjected Plaintiff Culler to inappropriate and obscene sexual comments, jokes, and insults.

66. Plaintiff Culler experienced this conduct on a daily basis.

67. On Plaintiff Culler's second day of work, Kenneth Urbania invited Plaintiff Culler to his house for a tour.

68. During the tour, Kenneth Urbania pointed to his bathtub and indicated that it was a perfect place to have sex.

69. While he was showing Plaintiff Culler a bedroom, Plaintiff Culler commented that the bedroom had a nice view for deer watching.

70. Kenneth Urbania shockingly responded, "the view would be better if you were bent over taking it from behind while looking at the deer."

71. Plaintiff Culler was disgusted by the comment and changed the subject.

72. At one point, Kenneth Urbania asked Plaintiff Culler when was the last time she had sex with her husband. Uncomfortable, Plaintiff jokingly said that it had been "years."

73. After that, Kenneth Urbania spread rumors around the office that Plaintiff Culler never had sex with her husband.

74. Kenneth Urbania offered to buy sex toys for Plaintiff Culler.

75. Plaintiff Culler was humiliated and insulted by these comments.

76. Plaintiff Culler realleges the sexual harassment alleged in paragraph 46 of this Complaint.

77. In November 2021, during a company conference in Tampa, Florida, Kenneth Urbania commented to Plaintiff Culler about the size of the showers and whispered in her ear about what he could do to her sexually in the shower.

78. One evening during the Tampa conference, Kenneth Urbania began relentlessly texting Plaintiff Culler and invited her to his hotel room for "pillow talk." Plaintiff Culler rejected his request.

79. He also texted her about an obscene sexual position called a "spinner," and he explained that it referred to a sexual act where a female mounts on top of a male during sex and spins around.

80. Kenneth Urbania also claimed that Plaintiff Culler's breasts would "swell" every time Plaintiff Culler spoke with Kenneth Urbania.

81. Kenneth Urbania also asked Plaintiff Culler for her opinion on who was the most attractive man between Kenneth Urbania and two other men. Before telling Plaintiff Culler to respond, Kenneth Urbania said, "remember who signs your paychecks."

82. Kenneth Urbania threatened Plaintiff Culler's job by saying she would not "have a job" if Plaintiff Culler told anyone about a sexual affair that Kenneth Urbania had with another woman.

83. Plaintiff Culler was intimidated and humiliated by Kenneth Urbania's texts and only responded in short, cursory responses before shutting down the conversation.

84. Because of Kenneth Urbania's degrading texts, Plaintiff Culler had physically reacted, swelled up, and broken into hives.

85. In early 2022, Kenneth Urbania demanded that Plaintiff Culler measure his body for a suit fitting. Plaintiff Culler felt that she had no choice but to comply and she embarrassingly had to measure his inseam near his groin.

86. In 2022, Plaintiff Culler had to bring her minor daughters to work. While there, Collin Urbania began making sexually explicit gestures towards Plaintiff Culler's daughters and reenacted a sex scene from *The Wolf of Wall Street*.

87. Kenneth Urbania encouraged and laughed at Collin Urbania's conduct.

88. Plaintiff Culler immediately removed her daughters from the environment.

89. When Plaintiff Culler would wear a V-neck blouse to work, Kenneth Urbania would tug on his own shirt suggesting that Plaintiff Culler should pull her shirt down so he could see her see her cleavage.

90. On multiple occasions, Kenneth Urbania told Plaintiff Culler that her "boobs look big today."

91. Kenneth Urbania also spread false rumors about Plaintiff Culler sleeping with an insurance agent.

92. Plaintiff Culler realleges the sexual harassment alleged in paragraphs 47-50 of this Complaint.

93. Plaintiff Culler realleges the claims alleged in paragraphs 54 of this Complaint.

94. Plaintiff Culler began working from home to avoid the harassment.

95. Plaintiff Culler was constructively discharged in June 2023.

**FACTUAL BACKGROUND – PLAINTIFF MACKENZY SCHAEFER**

96. Plaintiff Mackenzy Schaefer was hired by Defendant in or around July 2020

97. Plaintiff Schaefer started as an Executive Assistant and was promoted to a Project Manager position.

98. Most recently, Plaintiff Schaefer was promoted to Director of Operations, and her duties consisted of educating agents, marketing for vendors, planning the annual conference, and scheduling meetings, among other things.

99. Plaintiff Schaefer personally witnessed Kenneth Urbania sexually harass and make sexually offensive and obscene comments, jokes, and insults.

100. Kenneth Urbania made harassing remarks, jokes, and insults in front of Plaintiff Schaefer on a daily basis.

101. In November 2021, during the Tampa conference, Kenneth Urbania and Collin Urbania described sexual intercourse between a conference attendee and a woman, explaining that the woman was menstruating and "squirted" across the room. Plaintiff Schaefer heard about this conversation from another employee, and it made her disgusted and uncomfortable.

102. In planning for a company trip, Kenneth Urbania told Plaintiff Schaefer to book one room for Kenneth Urbania to share with a female employee. He oddly told Plaintiff Schaefer to book two beds so no one got the "wrong idea."

103. This request made Plaintiff Schaefer uncomfortable because Kenneth Urbania was married and Plaintiff Schaefer was acquainted with Kenneth Urbania's wife.

104. In May 2022, during a company conference, Kenneth Urbania asked Plaintiff Schaefer to switch around employees' rooms so that a particular female employee would be sleeping in the room adjoining to Kenneth Urbania's room. This request again put

11

Plaintiff Schaefer in an uncomfortable position, but she felt she had no choice but to comply.

105. Kenneth Urbania told Plaintiff Schaefer on numerous occasions that Plaintiff Culler had not had sex with her husband in years.

106. Plaintiff Schaefer would respond by saying she did not want to continue the conversation and would leave the room. But Kenneth Urbania persisted.

107. Kenneth Urbania often told Plaintiff Schaefer and other employees that because he was a 70% owner of the company (at the time) that he had the most influence on employees' pay.

108. Plaintiff Schaefer witnessed Kenneth Urbania slam books on Plaintiff Schultz's desk and scream at her on multiple occasions.

109. Plaintiff was a second-hand witness of the sexual harassment alleged in paragraph 77 of this Complaint.

110. Plaintiff Schaefer realleges the claims alleged in paragraphs 54 of this Complaint.

111. Plaintiff Schaefer began working from home to avoid the harassment.

112. Plaintiff Schaefer was constructively discharged in or around June 2023.

## COUNT I – TITLE VII

**Sexual Harassment: Hostile Work Environment/Constructive Discharge - All Plaintiffs**

113. Paragraphs 1 through 112 above are realleged and incorporated herein.

114. Defendant engaged in conduct that violates Title VII prohibiting sex discrimination, by harassing Plaintiffs, and by creating and encouraging a hostile work environment for Plaintiffs.

115. The harassment of Plaintiffs by Kenneth Urbania was unwelcome, which was indicated by all Plaintiffs.

116. The harassment was based on Plaintiffs' sex.

117. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

118. Defendant knew or should have known of the harassment yet did not take immediate and corrective action, causing the constructive discharge of Plaintiffs.

119. The harassment was committed against Plaintiffs by an employee with supervisory authority over Plaintiff because Kenneth Urbania is the President and CEO of Defendant.

120. As a result of the hostile environment described herein, Plaintiffs were constructively discharged from their employment.

121. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

122. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## COUNT II – R.C. § 4112

### Sexual Harassment: Hostile Work Environment/Constructive Discharge  - All Plaintiffs

123. Paragraphs 1 through 122 above are realleged and incorporated herein.

124. Defendant engaged in conduct that violates the Ohio Civil Rights Act prohibiting sex discrimination, by harassing Plaintiffs, and by creating and encouraging a hostile work environment for Plaintiffs.

125. The harassment of Plaintiffs by Kenneth Urbania was unwelcome, which was indicated by all Plaintiffs.

126. The harassment was based on Plaintiffs' sex.

127. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

128. Defendant knew or should have known of the harassment yet did not take immediate and corrective action.

129. The harassment was committed against Plaintiffs by an employee with supervisory authority over Plaintiff because Kenneth Urbania is the President and CEO of Defendant.

130. As a result of the hostile environment described herein, Plaintiffs were constructively discharged from their employment.

131. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

132. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs demand:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $500,000.00 and any and all other relief, which the Court deems just and appropriate.

                              Respectfully submitted,

                              */s/Rachel Sabo Friedmann*
                              Rachel Sabo Friedmann (0089226)
                              (*Rachel@TheFriedmannFirm.com*)
                              Dominick A. Kocak (0102165)
                              (*Dominick@TheFriedmannFirm.com*)
                              **The Friedmann Firm LLC**
                              3740 Ridge Mill Dr
                              Hilliard, Ohio 43026
                              Telephone: (614) 610-9755

                              *Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

                              */s/Rachel Sabo Friedmann, Esq.*
                              Rachel Sabo Friedmann (0089226)